Richard B. SMITH, Plaintiff-Appellee,

v.

Sheriff Mike SULLIVAN, etc., et al., Defendants-Appellants.

No. 78–1660.

United States Court of Appeals, Fifth Circuit.

Feb. 14, 1980.

George N. Rodriguez, Jr., County Atty., Michael Patrick Davis, Asst. County Atty., El Paso, Tex., for defendants-appellants.

Bruce J. Ponder, Bruce Hallmark, El Paso, Tex., for plaintiff-appellee.

Before COLEMAN, Chief Judge, FRANK M. JOHNSON, Jr. and POLITZ, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

This is an appeal from a judgment of contempt entered against the sheriff and the members of the commissioners court of El Paso County, Texas, by the United States District Court for the Western District of Texas.

Contempt proceedings were initiated as a result of the defendants' failure to comply with the district court's October 19, 1977, order limiting to 500 the inmate population at the El Paso County jail.[1] In February, 1978, the defendants reported to the court that they had allowed the population to exceed 500.[2] The district court ordered the

---

**1.** The order is discussed in *Smith v. Sullivan,* 611 F.2d 1039 (5th Cir. 1980).

**2.** The defendants reported the following instances of noncompliance:

    (1) Second shift (3:00 P.M. to 11:00 P.M.) on Tuesday, February 14, 1978; 520 inmates.

    (2) Third shift (11:00 P.M. to 7:00 A.M.), on Tuesday, February 14, 1978; 518 inmates.

    (3) First shift (7:00 A.M. to 3:00 P.M.) on Wednesday, February 15, 1978; 512 inmates.

    (4) Second shift (3:00 P.M. to 11:00 P.M.) on Wednesday, February 15, 1978; 530 inmates.

    (5) Third shift (11:00 P.M. to 7:00 A.M.) on Wednesday, February 15, 1978; 520 inmates.

    (6) First shift (7:00 A.M. to 3:00 P.M.) on Thursday, February 16, 1978; 514 inmates.

    (7) Second shift (3:00 P.M. to 11:00 P.M.) on Saturday, February 18, 1978; 505 inmates.

    (8) Third shift (11:00 P.M. to 7:00 A.M.) on Saturday, February 18, 1978; 517 inmates.

defendants to appear before the court on March 10, 1978, and show cause why each should not be held in contempt. After a hearing, the district court issued findings of fact and conclusions of law,[3] and on March 15, 1978, entered against each of the defendants a judgment of contempt.[4] The defendants filed this appeal.

■ The first duty of an appellate court in reviewing a contempt judgment is to determine whether the nature of the contempt proceeding was civil or criminal. *United States v. Timmons*, 607 F.2d 120, 123 (5th Cir. 1979); *Clark v. Boynton*, 362 F.2d 992, 993–94 (5th Cir. 1966). The difference may have importance in determining the type of notice required, *see* Fed.R.Crim.P. 42(b), the applicable standard of proof, *compare Northside Realty Associates, Inc. v.* *United States*, 605 F.2d 1348, 1352 n. 8 (5th Cir. 1979) (civil contempt proceeding reviewed under clear and convincing standard) *with In re Stewart*, 571 F.2d 958, 965 (5th Cir.) (criminal contempt requires proof beyond reasonable doubt), the relevance of the validity of the underlying order, *ITT Community Development Corp. v. Barton*, 569 F.2d 1351, 1356 (5th Cir. 1978), and, among other considerations, the relevance of intent, *compare McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949) (intent unimportant to civil contempt) *with In re Joyce*, 506 F.2d 373, 378 (5th Cir. 1975) (criminal contempt requires "willful, contumacious, or reckless state of mind").

■■ Here there was some confusion as to whether the contempt proceeding was

---

(9) First shift (7:00 A.M. to 3:00 P.M.) on Sunday, February 19, 1978; 520 inmates.

(10) Second shift (3:00 P.M. to 11:00 P.M.) on Sunday, February 19, 1978; 527 inmates.

(11) Third shift (11:00 P.M. to 7:00 A.M.) on Sunday, February 19, 1978; 528 inmates.

(12) First shift (7:00 A.M. to 3:00 P.M.) on Monday, February 20, 1978; 520 inmates.

(13) Second shift (3:00 P.M. to 11:00 P.M.) on Monday, February 20, 1978; 518 inmates.

(14) Third shift (11:00 P.M. to 7:00 A.M.) on Monday, February 20, 1978; 516 inmates.

(15) First shift (7:00 A.M. to 3:00 P.M.) on Tuesday, February 21, 1978; 501 inmates.

(16) Second shift (3:00 P.M. to 11:00 P.M.) on Tuesday, February 21, 1978; 508 inmates.

(17) Third shift (11:00 P.M. to 7:00 A.M.) on Tuesday, February 21, 1978; 506 inmates.

3. *See* Appendix.

4. Each of the judgments stated:

The Court having found the Defendant, ~~Mike Sullivan, Sheriff,~~ in civil contempt as stated in the Findings of Fact and Conclusions of Law entered on this day,

IT IS ORDERED that the Defendant, ~~Mike Sullivan, Sheriff,~~ be committed to the custody of the Attorney General of the United States, or his designated authorized representative, for a period of two (2) days and twelve (12) hours, and that the Defendant, be

assessed a fine of THREE HUNDRED SEVENTY–FIVE AND NO/100 ($375.00) DOLLARS, said fine to be paid into the Registry of the United States District Court for the Western District of Texas. The sentence of fine and imprisonment will be suspended on the condition that the inmate population of the El Paso County Jail not again exceed 500 between the dates of March 10, 1978 and September 10, 1978. Additionally, if the provision of this Court's Order of October 19, 1977 requiring the inmate population of the El Paso County Jail to be no greater than 500, is ultimately held, on final appeal, to be outside the scope of this Court's authority, then the fine assessed and imprisonment imposed shall be totally and permanently withdrawn.

If this Court's Order of October 19, 1977 is upheld on appeal, the fine will be due and the term of imprisonment will begin at noon on the 10th day following this Court's receipt of the mandate from the United States Court of Appeals for the Fifth Circuit, provided Defendant's contempt has not been purged by compliance with this Court's Order through September 10, 1978. The service of the sentence of imprisonment, if any, shall be interrupted to facilitate the Defendant's attendance at any regularly scheduled meeting of the El Paso County Commissioners' Court so that the Defendant will be able to carry out the duties of his office.

IT IS FURTHER ORDERED that Defendant, ~~Mike Sullivan, Sheriff,~~ while serving his term of imprisonment, if any, shall be segregated, housed, fed, clothed, and treated in the same manner as other prisoners of the same classification.

civil or criminal. Although the district court clearly characterized the proceeding as civil, that characterization is not conclusive. *Lewis v. S. S. Baune,* 534 F.2d 1115, 1119 (5th Cir. 1976). What is conclusive is the apparent purpose of the trial court in issuing the contempt judgment. *Shillitani v. United States,* 384 U.S. 364, 368–70, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). If its purpose was "coercive" or "remedial," the contempt judgment being designed to enforce compliance with a court order or to compensate a party injured by noncompliance, then the proceeding was civil. *Id.; United States v. Rizzo,* 539 F.2d 458, 463 (5th Cir. 1976). *Cf. In re Nevitt,* 117 F. 448, 461 (8th Cir. 1902) (civil contemnors "carry the keys of their prison in their own pockets"). If its purpose was "punitive," the contempt judgment being designed to vindicate the authority of the court and not terminating upon compliance with a court order, then the proceeding was criminal. *United States v. United Mine Workers,* 330 U.S. 258, 302, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *In re Stewart,* 571 F.2d at 963. *See generally* 8B *Moore's Federal Practice* ¶ 42.02[2] (rev. ed. Sept. 1979). Here both purposes are evident. The district court seems to have acted with a punitive purpose in citing each day in which the inmate population exceeded 500 as a separate contempt and in imposing for each such contempt a nonrecurring fine, to be paid to the court rather than to the inmate-plaintiffs, and a definite period of imprisonment. But the court revealed a coercive purpose in ruling at the time of the entrance of the judgments that the fines and sentences of imprisonment would actually be imposed only if noncompliance reoccurred before September 10, 1978.[5]

Although the proceeding seems best characterized as a criminal one, *see In re Stewart,* 571 F.2d at 964 n.4 (where contempt order is partly remedial and partly punitive, punitive feature fixes its character for purposes of review), it is unnecessary to dwell on the issue in this case.

■ Viewed as criminal convictions, the court's contempt judgments are clearly invalid. The court failed to notify the defendants, as required by Fed.R.Crim.P. 42(b), that they were to be prosecuted for criminal contempt. *See United States v. Rizzo,* 539 F.2d at 464–65. It also failed to make the necessary finding of contumacious intent. *See In re Joyce,* 506 F.2d at 378. There was no showing of such intent, much less evidence establishing it beyond a reasonable doubt.[6] Moreover, under criminal

---

5. The district court also delayed imposition of the contempt judgments pending the outcome of the defendants' previously-filed appeal of the 500-inmate limit and stated that if the limit was vacated the judgments would be "totally and permanently withdrawn."

Because the 500-inmate limit has been vacated, *see Smith v. Sullivan,* 611 F.2d 1039 (5th Cir. 1980) (decided simultaneously with this case), the issue presented here *may* be mooted if the district court, as it indicated, "totally and permanently" withdraws the judgments of contempt. However, at this stage of the litigation, the contempt issue is very much alive.

6. On several occasions, the defendants unsuccessfully sought guidance from the district court as to the procedures to be followed when the inmate population reached 500. In its findings of fact, the district court noted that the defendants made one such attempt in a report to the court filed on February 14, 1978. The report stated:

COME NOW, the Defendants in the above styled and numbered cause and file this report to this Honorable Court and would show unto the Court as follows:

I

As of 2:30 p. m. on February 14, 1978, there were 487 persons in the El Paso County Jail.

II

The United States Marshall has informed Defendants he wishes to incarcerate 28 more persons in the El Paso County Jail.

III

The incarceration of these additional persons would cause the inmate population to exceed 500 persons in violation of this Court's Order of October 19, 1977.

IV

Defendants have made every effort to reduce the inmate population but are now faced with the alternative of violating state court commitment orders by releasing state prisoners or violating this court's order of October 19, 1977, by refusing these federal prisoners or exceeding the inmate quota set by the Court.

contempt statutes, the court had the power only to impose fines or imprisonment, not both. *See United States v. Barnette*, 546 F.2d 187, 193 (5th Cir.), *cert. denied*, 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 79 (1977).

Viewed as civil judgments, the court's contempt judgments are also clearly invalid. In *Smith v. Sullivan*, 611 F.2d 1039 (5th Cir. 1980), we vacated the underlying order on which they were based. *See United States v. United Mine Workers*, 330 U.S. at 294, 67 S.Ct. 677; *ITT Community Development Corp. v. Barton*, 569 F.2d at 1356.

Be they civil or criminal, the contempt judgments must be reversed.[7]

REVERSED.

### APPENDIX

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above entitled and numbered cause came before the Court, on March 10, 1978, for consideration of the Defendants' Response to this Court's Order to Show Cause why the Defendants should not be held in contempt of Court, which Order was issued on February 28, 1978. Having duly considered the Defendants' Response to the Court's Order to Show Cause and having duly considered arguments of counsel for the Defendants, the Court makes the following Findings of Fact and Conclusions of Law required by Rule 52(a) of the Federal Rules of Civil Procedure:

### FINDINGS OF FACT

1. This Court previously entered Findings of Fact and Conclusions of Law in this case on September 25, 1975, which found the persons in the El Paso County Jail have been deprived of the rights assured them and protected by the 1st, 8th and 14th Amendments to the Constitution of the United States and 42 U.S.C. § 1983, due to (a) the overall conditions of the El Paso County Jail, and (b) a combination of practices imposed upon them by Sheriff Mike Sullivan, and further found that the existing facilities and practices maintained by Defendants are not in compliance with the minimum requirements established by Art. 5115, V.A.T.S.

2. On September 25, 1975, this Court entered a Judgment directing the Defendants to initiate remedial programs and enjoining Defendants from further violating the provisions of Art. 5115, V.A.T.S. after September 1, 1977.

3. Defendants appealed the Judgment to the United States Court of Appeals for the Fifth Circuit. Subsequent to the receipt of the opinion of said Court this Court entered an Order on October 19, 1977 which in part provided:

"That by no later than 5:00 o'clock P.M. on November 23, 1977, the Commissioners' Court of El Paso County, Texas and Mike Sullivan, Sheriff of El Paso County, Texas, shall cause the inmate population of the El Paso County Jail to be reduced to no more than 500 total inmates;"

4. That pursuant to this Court's Order of October 19, 1977, Defendants have filed, on each and every successive Tuesday beginning January 3, 1978, a report to this Court, certifying, among other things, the total inmate population of the El Paso County Jail.

5. In the report dated February 21, 1978 and the report dated February 27, 1978, filed with the Court on each of those days, the Defendants reported that the number of inmates in the El Paso County Jail was above 500 on the following occasions:

(1) Second shift (3:00 P.M. to 11:00 P.M.) on Tuesday, February 14, 1978; 520 inmates.

---

*PRAYER*

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully pray this Court give the instructions as to how to proceed in this situation.

The district court made no response, and the following day the inmate population increased

to 520. For this increase alone, the court imposed on each of the defendants a $25 fine and a term of four hours' imprisonment.

7. *See also Clark v. Boynton*, 362 F.2d at 994 (confusion as to whether contempt proceeding is civil or criminal is itself a ground for reversal).

(2) Third shift (11:00 P.M. to 7:00 A.M.) on Tuesday, February 14, 1978; 518 inmates.

(3) First shift (7:00 A.M. to 3:00 P.M.) on Wednesday, February 15, 1978; 512 inmates.

(4) Second shift (3:00 P.M. to 11:00 P.M.) on Wednesday, February 15, 1978; 530 inmates.

(5) Third shift (11:00 P.M. to 7:00 P.M.) on Wednesday, February 15, 1978; 520 inmates.

(6) First shift (7:00 A.M. to 3:00 P.M.) on Thursday, February 16, 1978; 514 inmates.

(7) Second shift (3:00 P.M. to 11:00 P.M.) on Saturday, February 18, 1978; 505 inmates.

(8) Third shift (11:00 P.M. to 7:00 P.M.) on Saturday, February 18, 1978; 517 inmates.

(9) First shift (7:00 A.M. to 3:00 P.M.) on Sunday, February 19, 1978; 520 inmates.

(10) Second shift (3:00 P.M. to 11:00 P.M.) on Sunday, February 19, 1978; 527 inmates.

(11) Third shift (11:00 P.M. to 7:00 A.M.) on Sunday, February 19, 1978; 528 inmates.

(12) First shift (7:00 A.M. to 3:00 P.M.) on Monday, February 20, 1978; 520 inmates.

(13) Second shift (3:00 P.M. to 11:00 P.M.) on Monday, February 20, 1978; 518 inmates.

(14) Third shift (11:00 P.M. to 7:00 A.M.) on Monday, February 20, 1978; 516 inmates.

(15) First shift (7:00 A.M. to 3:00 P.M.) on Tuesday, February 21, 1978; 501 inmates.

(16) Second shift (3:00 P.M. to 11:00 P.M.) on Tuesday, February 21, 1978; 508 inmates.

(17) Third shift (11:00 P.M. to 7:00 A.M.) on Tuesday, February 21, 1978; 506 inmates.

6. On all the above-mentioned days and times, the inmate population of the El Paso County Jail exceeded 500, in violation of this Court's Order of October 19, 1977.

7. On February 28, 1978, this Court issued an Order to Show Cause, if any, why the Defendants should not be held in contempt of Court for each of the above-mentioned violations.

8. On February 28, 1978, Defendants filed a Return to Show Cause with the Court, and on March 10, 1978, amended their Original Return to Show Cause.

9. All persons in the El Paso County Jail on the above listed occasions were there pursuant to lawful authority.

10. Defendants did request guidance from the Court as to what procedures should be followed when the inmate population reaches 500 persons in Defendants' Report to the Court on February 14, 1978.

11. Each of the following days' violations constituted a contempt of this Court by each Defendant:

(1) Wednesday, February 15, 1978.

(2) Thursday, February 16, 1978;

(3) Sunday, February 19, 1978;

(4) Monday, February 20, 1978; and

(5) Tuesday, February 21, 1978.

12. Each of the Defendants should be sentenced to the custody of the Attorney General of the United States, or his designated authorized representative, as follows:

(1) For the first day of violation—imprisonment for four hours;

(2) For the second day of violation—imprisonment for eight (8) hours;

(3) For the third day of violation—imprisonment for twelve (12) hours;

(4) For the fourth day of violation—imprisonment for sixteen (16) hours;

(5) For the fifth day of violation—imprisonment for twenty (20) hours. That is, each Defendant shall be sentenced to a term of two (2) days and twelve (12) hours.

13. In addition to the sentence of imprisonment, each Defendant will be required to pay a fine as follows:

(1) For the first day of violation—a fine of $25.00;

(2) For the second day of violation—a fine of $50.00;

(3) For the third day of violation—a fine of $75.00;

(4) For the fourth day of violation—a fine of $100.00; and

(5) For the fifth day of violation—a fine of $150.00.

Therefore, each Defendant will be required to pay, as fine for civil contempt of this Court, a total of $375.00 into the Registry of the Court.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties to this action by virtue of 28 U.S.C. § 1343, 28 U.S.C. § 2201, and 42 U.S.C. § 1983. (See Conclusions of Law, September 25, 1975). This Court has jurisdiction to enforce its authority against disobedience or resistance to its Order of October 19, 1977, pursuant to 18 U.S.C. § 401.

2. The Defendants do not have the legal authority to release or to refuse to accept any persons committed to the El Paso County Jail by lawful authority.

3. Each Defendant is in civil contempt of this Court for his failure to maintain the inmate population of the El Paso County Jail at no more than 500 inmates, in violation of this Court's Order of October 19, 1977.