566 F.2d 490
 James LISTER et al., on behalf of themselves and others
similarly situated, Plaintiffs-Appellees,
v.
COMMISSIONERS COURT, NAVARRO COUNTY and Robert Dunn, County
Judge, Navarro County, Defendants-Appellants.
 No. 76-2829.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 17, 1978.
 
 Earl Luna, Thomas V. Murto, III, Dallas, Tex., for defendants-appellants.
 Larry R. Daves, Tyler, Tex., for plaintiffs-appellees.
 Appeals from the United States District Court for the Northern District of Texas.
 Before TUTTLE, COLEMAN and RONEY, Circuit Judges.
 COLEMAN, Circuit Judge.
 
 
 1
 Named plaintiffs, on behalf of themselves and all Negro residents and registered voters in Navarro County, Texas, brought suit under 42 U.S.C., § 1983, and the Fourteenth and Fifteenth Amendments to the Constitution, challenging a 1969 reapportionment of Navarro County. The complaint, twice amended, alleged that the Commissioners Court, the governing body of the County, and Robert Dunn, the County Judge and chief administrative officer of the County, implemented a reapportionment plan which failed to meet population norms and which invidiously cancelled, diluted, and minimized the effect of the black vote in Navarro County. Jurisdiction was based on 28 U.S.C., §§ 1343 and 1331.
 
 
 2
 After the presentation of evidence and proposed corrective reapportionment plans, the District Court rejected the new plan proposed by the Commissioners and appointed a special master to devise and submit to the Court an acceptable plan. The Court selected one of three plans submitted by the special master and ordered its implementation by the defendants.
 
 
 3
 As to land area, Navarro County is predominantly rural, located near the center of East Texas. Its population in 1970 was 31,150. The City of Corsicana, the county seat, at the geographical center of the County, in 1970 had a population of 19,972.
 
 
 4
 The county governing body is the Commissioners Court, composed of four commissioners and the county judge, ex officio. The County is divided into four precincts and a commissioner is elected from each precinct, while the judge is elected at large.
 
 
 5
 The population norm per precinct is 7,787, hence there are enough people in the City of Corsicana to elect 21/2 commissioners. On an one person-one vote approach it is apparent that the City would have to be spread among at least three precincts.
 
 
 6
 According to the 1970 Census the total number of blacks residing in the County was 6,786, of whom 4,486 lived in Corsicana, mostly in the southeastern section of the city.
 
 
 7
 The evidence indicates that a county commissioner spends approximately 60% of his time dealing with the maintenance and operation of county roads.
 
 
 8
 Prior to 1969, the entire City of Corsicana, containing more than 60% of the population of the County, was included in one precinct. The Commissioners Court appointed a citizens committee to propose redistricting plans. The committee submitted five or six different plans, all of which were rejected by the Commissioners. After the last plan was rejected, the Commissioners Court devised its own plan for reapportionment. This plan, the 1969 plan, divided the county into four precincts, which the District Court found to contain a maximum population deviation of 16%. Plaintiffs argued that the plan trifurcated the black population of Corsicana, dispersing it among Precincts One, Two, and Three.
 
 
 9
 A major portion of the proceedings below and the briefs here were consumed by evidence and arguments for and against the 1969 plan. We think this was, and is, altogether beside the point. Regardless of the merits or the demerits of the 1969 plan the County Commission had a clear duty to reapportion on the basis of the 1970 Census, especially since its 1969 plan was not based on the 1960 Census. See, e. g., Connor v. Finch, 431 U.S. 407, 416, 97 S.Ct. 1828, 52 L.Ed.2d 465 (1977). The Commissioners Court had made no effort to do this, so the case is reduced to what the District Court should appropriately have done in the absence of such action.
 
 
 10
 Before addressing that question, however, we must first decide whether the District Court had jurisdiction of the action as brought.
 
 
 11
 The plaintiff-appellees concede that there was no jurisdiction under42 U.S.C. § 1983 because the Commissioners Court was sued rather than the four individual members of the Court, City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); Muzquiz v. City of San Antonio, 5 Cir. 1976, 528 F.2d 499; Adkins v. Duval County School Board, 5 Cir. 1975, 511 F.2d 690.
 
 
 12
 Appellees submit however that jurisdiction existed under 28 U.S.C. § 1331, the federal question statute. Appellants argue that the required jurisdictional amount (exceeding $10,000) has not been established.
 
 
 13
 The complaint offered only the bare allegation that there was "an amount in controversy in excess of Ten Thousand ($10,000) Dollars". Defendants answered that they had no knowledge or information as to jurisdictional amount and were leaving the plaintiffs to their proof of the allegation that a sum in excess of $10,000 was involved. Defendants further moved for judgment on the pleadings attacking jurisdiction under § 1331 because an amount in controversy in excess of $10,000 did not exist. The District Court made no findings as to the jurisdictional amount.
 
 
 14
 An allegation in the complaint of the requisite amount will normally suffice to confer jurisdiction upon the court if the claim is made in good faith and unless it appears to a legal certainty that the claim cannot be satisfied. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). However, if the plaintiff's allegation of jurisdictional amount is challenged in an appropriate manner by the defendant, the plaintiff must support the allegation by competent proof. KVOS, Inc. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936); Opelika Nursing Home, Inc. v. Richardson, 5 Cir., 1971, 448 F.2d 658. Here the challenge was made. Opelika Nursing Home, Inc. v. Richardson, supra. Thus the plaintiffs clearly had the burden of supporting their allegation of the jurisdictional amount. The only evidence the plaintiffs presented came from one of the named plaintiffs when he was asked about the value of the dilution of his vote:
 
 
 15
 Q. . . . (I)f you were to place a money value on that, could you place a money value on that particular deprivation?
 
 
 16
 A. Of course not. You can't place a money value on anything like that.
 
 
 17
 This was inadequate to satisfy the burden.[1]
 
 
 18
 Two district court cases relied upon by appellees stand for the proposition that the inherent value of the constitutional right to vote is equal to any amount set for jurisdictional purposes, West End Neighborhood Corp. v. Stans, 312 F.Supp. 1066 (D.C.D.C., 1970); Halderman v. Pittenger,391 F.Supp. 872 (E.D.Pa.1975). Nevertheless, the law is plain that a controversy must be capable of money valuation in order to satisfy the jurisdictional amount requirement, Barry v. Mercein, 46 U.S. (5 How.) 103, 12 L.Ed. 70 (1847). The inherent value alone of a constitutional right is insufficient to satisfy the jurisdictional amount requirement, Goldsmith v. Southerland, 6 Cir., 1970, 426 F.2d 1395, cert. denied 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 270; McGaw v. Farrow, 4 Cir., 1973, 472 F.2d 952; 14 Wright, Miller & Cooper, Federal Practice and Procedure, § 3709 (1976).
 
 
 19
 Ordinarily, where the District Court is initially without jurisdiction we reverse and remand, with directions that the complaint be dismissed. Here, however, one member of the Navarro County Commissioners Court, the county judge, was sued in his individual capacity. The appropriate course, then, is to vacate and remand in order that the plaintiffs may have the opportunity to bring in the remaining indispensable parties (the four commissioners as individuals) and the litigation may thereafter proceed under § 1983 or to offer proof as to the monetary value of the claim under § 1331.
 
 
 20
 This being the outcome of the appeal, we consider it advisable as a matter of judicial economy to note one other facet of the case. The District Court appointed a special master to formulate plans for the reapportionment of the county and one of his proposed plans was adopted. The individual appointed special master had previously testified in the case as a witness for the plaintiffs. Defendants objected to his appointment on that ground and moved for his disqualification. In denying the motion the trial court expressed confidence in the appointee's ability to perform the duties and responsibilities of a judicial officer without bias or prejudice. We nevertheless must hold that the witness should not have been appointed as the special master. A special master "should have no interest in or relationship to the parties . . . and (should be) fit to perform the duties incumbent on one sitting in the place of the court". 5A Moore, Moore's Federal Practice, P 53.03, p. 2922. A special master has the duties and obligations of a judicial officer, In Re Gilbert, 276 U.S. 6, 48 S.Ct. 210, 72 L.Ed. 441 (1928). Having served as a witness for one side in the case, the appointee was accordingly disqualified.
 
 
 21
 Consequently, if the case comes to trial again the District Court may consider all evidence previously adduced not compiled by the special master in his capacity as such and will, of course, consider any new evidence which appropriately may be adduced. The new reapportionment should be based entirely on the 1970 Census.
 
 
 22
 The judgment of the District Court is vacated, and remanded for further proceedings not inconsistent herewith.
 
 
 
 [1]
 The failure by plaintiffs to present any evidence supporting their allegation of the jurisdictional amount is clearly relevant to a consideration of their "good faith" under the standard of St. Paul Mercury Indemnity Company v. Red Cab Company, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). We need not reach the question of whether the jurisdictional amount was alleged in good faith since the plaintiffs did not meet their affirmative burden to support the jurisdictional amount by competent proof once the allegation was appropriately challenged